U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

APR - 3 2017

TONY R. MOORE, CLERK
BY: _____MB_____
        DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| CAMACIA SMITH-ROSS | CIVIL ACTION NO. 1:16-0870 |
| VERSUS | JUDGE JAMES T. TRIMBLE, JR. |
| LOUISIANA COLLEGE, ET AL | MAG. JUDGE HORNSBY |

### MEMORANDUM RULING

Before the court is "Defendants' Motion for Summary Judgment" (R. #10) filed by Louisiana College ("LC"), Louisiana College Board of Trustees (the "Board"), Dr. Rick Brewer, and Dr. Cheryl Clark wherein the movers seek to dismiss with prejudice the instant lawsuit because the applicable law does not allow the recovery which Plaintiff, Camacia Smith-Ross, seeks.

### STATEMENT OF FACTS

Plaintiff, Ms. Smith-Ross, was employed at Louisiana College as an Associate professor, Dean of the Education and Director of the TEACH/MAT program. LC is a private, not-for-profit educational institution; it has never held itself out to be a public university and it has never operated as a public institution.[1] The Board was not created by state statute, nor is it under the operational control or administrative authority of the State of Louisiana, or any agency, division, board, office or officer of the State. Neither Dr. Brewer nor Dr. Clark had a personal contract with Ms. Smith-Ross.

---

[1] Defendants' exhibit A, ¶ 3(a)-(d); Defendants' exhibit C, Smith-Ross depo. pp. 20–21 and pp. 45-46.

1

Each "Non-Tenured Faculty Contract" signed by Ms. Smith-Ross was subject to non-renewal[2] and non-renewal was provided in the Louisiana College Faculty Handbook.[3] LC does not guarantee tenure even if a faculty member is eligible for tenure consideration.[4] [5] Ms. Smith-Ross was issued notice of non-renewal of her contract on January 12, 2016. On March 3, 2016, Ms. Smith-Ross was placed on administrative leave, and she received her full pay through July 31, 2016 which was the end of her contract.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.[6] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[7] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[8] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[9] Once the movant makes this

---

[2] Defendants' exhibit A, Brewer affidavit, ¶ 4(a)(-(c)); Defendants' exhibit C, Smith-Ross Depo. pp. 167-168; Defendants' exhibit C, Smith-Ross depo., exhibit 2, Non-Tenured Faculty Contracts.
[3] Id.
[4] Defendants' exhibit C, Smith-Ross depo. pp. 98,110; Defendants' exhibit A, Brewer Affidavit.
[5] The LC Faculty Handbook 2015-2016 was incorporated into and made a part of Ms. Smith-Ross's Non-Tenured Faculty Contract for the period August 31, 2015-July 31, 2016.Defendants' exhibit A, ¶ 9; Defendants' exhibit C, Smith-Ross depo., exhibit 3.
[6] Fed. R. Civ. P. 56(c).
[7] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).
[8] Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999).
[9] Vera v. Tue, 73 F.3d 604, 607 (5th Cir. 1996).

showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[10] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[11] There is no genuine issue of material fact if, viewing the evidence in the light more favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party.[12] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.[13]

## LAW AND ANALYSIS

In her complaint, Ms. Smith-Ross asserts claims under 42 U.S.C. § 1983 ; she alleges that she has been denied rights guaranteed under the First Amendment to the U. S. Constitution.[14] Ms. Smith-Ross also alleges without specificity an action under the Fourteenth Amendment.[15] Ms. Smith-Ross seeks injunctive relief[16] to restrain Defendants from discriminating against her and denying her the opportunity to teach at LC. She also seeks a declaratory judgment from this court declaring that LC violated her First Amendment rights.[17] Ms. Smith-Ross asserts a state law cause of action for breach of contract. Finally, Plaintiff seeks nominal damages, compensatory damages, and costs and attorney fees under 42 U.S.C. § 1988.[18]

---

[10] Anderson, 477 U.S. at 249.
[11] Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).
[12] Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).
[13] Anderson, 477 U.S. at 249-50.
[14] R. #1, ¶ ¶ 3, 9, 10, 32, 35-42.
[15] Id. ¶ ¶ 4, 1-50.
[16] 28 U.S.C. § 2202.
[17] R. #1, ¶ 4 and Prayer for Relief.
[18] Id.

*28 U.S.C. § 1983*

To establish an action under 42 U.S.C. § 1983, a plaintiff must prove (1) a deprivation of a right secured by federal law, (2) that occurred under color of state law, and (3) was caused by a state actor. Section 1983 imposes liability for violations of rights secured by the Constitution, and not violations of duties of care arising out of tort law.[19]

"A plaintiff may satisfy the "under color of state law" requirement of § 1983 by proving that the conduct causing the deprivation is "fairly attributable to the State."[20] "Fair attribution" requires (1) that the deprivation is caused by the exercise of a state-created right or privilege, by a state-imposed rule of conduct, or by a person for whom the state is responsible, and (2) that the party charged with the deprivation may be fairly described as a state actor.[21]

Defendants assert that Ms. Smith-Ross alleges that defendants' alleged actions were taken "under the color and pretense of the policies, statutes, ordinances, regulations, customs, and usages of the State of Louisiana."[22] Defendants maintain that Ms. Smith-Ross has failed to identify any Louisiana State "policies, statutes, ordinances, regulations, customs, and usages" taken by any of the Defendants. Defendants further assert that Ms. Smith-Ross cannot substantiate her allegation that state action or state actors are involved in this case. Indeed, Defendants point out that in her deposition, Ms. Smith-Ross acknowledged that LC is a private entity and not a governmental entity,[23] nor is LC a public university, a US Governmental entity

---

[19] Victoria W. v. Larpenter, 369 F.3d 475 (5th Cir. 2004).
[20] Edmondson Oil Co., 457 U.S. 922, 937, 102 S.Ct. 2744, 2753 (1982).
[21] Landry v. A-Able Bonding, Inc., 75 F.3d 200, 203-204 (5th Cir. 1996).
[22] R. #1, ¶ 33.
[23] Defendants' exhibit C, Smith-Ross depo pp. 20-21.

4

or agency, a State of Louisiana entity or agency, or an arm of the United States or the Louisiana State government.[24] Defendants submit as summary judgment evidence the affidavit of LC President, Dr. Rick Brewer, which establishes that the State of Louisiana is not, nor has it been involved in any manner with the control and operations of LC.[25] Dr. Brewer also attests that the LC Board is not a creature of the State of Louisiana, and its members are not affiliated with or controlled by the State of Louisiana.[26] Thus, LC maintains that Ms. Smith-Ross can allege no facts, nor produce any evidence to support her allegations of "state action."

Plaintiff relies on <u>Brentwood v. Tennessee Secondary School Athletic Ass.</u>[27] to posit that a private organization itself exercises state powers. Plaintiff argues without supporting evidence that LC has "agreed to the terms of state agencies including the Louisiana State Board of Elementary and Secondary Education, Louisiana State Board of Regents, Louisiana State Department of Education, and the Louisiana State Boards of Nursing with the prescriptive admission, performance objectives, and matriculation components including assessment criteria for state licensure to occur.[28] Plaintiff further notes without supporting evidence the following to support her position that LC is a state actor: (1) As partner with the State of Louisiana, students receive State of Louisiana licenses; (2) LC applied for state approval to participate in the Teacher Practitioner Program in 2001; (3)LC's Department of Education provides mentoring to students seeking to receive their teaching certification; (4) LC provides alternative certification programs

---

[24] Id. p. p. 45-46.
[25] Defendants' exhibit A, ¶ 3.
[26] Id. ¶ 4.
[27] 531 U.S. 288 (2001).
[28] R. #12, p. 6.

5

for teachers seeking the required state certification;[29] (5) LC files Title 2 Reports annually with the Department of Education, (6) LC attends meetings with the Louisiana Department or Education, and (7) LC remains compliant with the Louisiana State Board of Regents.

Plaintiff then argues that LC, as a nominally private entity, may be a state actor when it is intertwined with governmental policies or when government is intertwined in its management or control.[30] The court agrees with Defendants that Ms. Smith-Ross has failed to submit any evidence to support her allegations,[31] but even more significantly, the court finds that even if Ms. Smith-Ross had provided the appropriate evidentiary support, such actions by LC does not convince us that the private college is so intertwined with the State of Louisiana to deem it a "state actor" to which a § 1983 action would be applicable.[32] Accordingly, because there is no state action, Ms. Smith-Ross's First and Fourteenth Amendment claims fail as a matter of law.

***Sexual and racial discrimination***

Defendants inform the court that in her opposition memorandum, plaintiff asserts for the first time, racial and sexual discrimination (plaintiff now alleges she was dismissed because she was a black female). Again, there is no evidence to support the new, not pled allegations. Accordingly, these claims will be dismissed as well.

---

[29] Plaintiff argues that LC's teacher certification program is sufficient to establish that the Department of Education has exercised state powers thereby promoting a governmental interest. R. #12, p. 7.
[30] Evans v. Newton, 382 U.S. 296, 86 S.Ct. 486 (1966).
[31] "Summary judgment may not be thwarted by conclusory allegations, unsupported assertions, or presentation of only a scintilla of evidence." Rogers v. Bromac Title Services, L.L.C., 756 F.3d 347, 350 (5th Cir. 2014).
[32] "The mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment . . . To make the requisite showing of state action by a regulated entity, [plaintiff] must establish "a sufficiently close nexus between the State and the challenged action of the regulated entity. Cornish v. Correctional Services, Corp. 403 F.3d 545, 550 (5th Cir. 2005)(citations omitted).

***Breach of contract claim detrimental reliance***

Ms. Smith-Ross alleges a breach of contract claim against the Defendants. Plaintiff asserts that she relied to her detriment on the promises contained in LC's various policy guarantees on tenure eligibility and procedure. The Louisiana Supreme Court has ruled that to establish detrimental reliance, a party must prove three (3) elements: "(1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance."[33] As noted by Defendants, Ms. Smith-Ross has not alleged that either Drs. Clark or Brewer individually made any promises to her, or that she relied to her detriment on anything they said or expressed. Consequently, there can be no breach of contract claim against these Defendants.

Defendants rely on the following provision in each relevant "Non-Tenured Faculty Contract:"

> This contract is subject to non-renewal . . . Non-tenured faculty shall be subject to the Reduction in Force Policy of the Faculty handbook, including any and all procedures including non-renewal. . . This shall serve as formal notification as required by the Faculty Handbook Section 2.7.1 ... This appointment is subject to ... all college policies ... including ... those set forth in the Faculty Handbook ... Said policies are hereby part of the terms and conditions the same as though they had been expressly set forth.[34]

---

[33] Suire v. Lafayette City-Parish Consol. Government, 907 So.2d 37, 59 (La. 04/12/05).
[34] Defendants' exhibit C, depo. exhibit 3.

7

Defendants remark that Ms. Smith-Ross was given notice on January 12, 2016 that LC would not offer her a new contract for the 2016-2017 academic year, and on March 3, 2016, she was given written notice of LC's placement of her on leave with pay. While Ms. Smith-Ross acknowledged in her deposition testimony that LC had the right not to renew her contract,[35] she asserts that LC had no right to remove her from her duties prior to the end of her contract. Ms. Smith-Ross does not provide the court with any law and/or policy to support her argument that a non-tenured faculty member must be allowed to teach and/or perform administrative duties until the expiration of the faculty member's contract. Thus, Defendants maintain that there was no breach of contract by LC's placing Ms. Smith-Ross on administrative leave with full pay. The court agrees and finds that there was no breach of contract by Defendants as to Ms. Smith-Ross's early removal from her duties.

Next, Ms. Smith-Ross alleges that she was denied the "proper tenure eligibility process" due her.[36] Defendants maintain that the Faculty Handbook conclusively shows that tenure is not guaranteed at LC even if a faculty member is eligible. Defendants also submit the affidavit of Dr. Brewer who attests that LC does not guarantee tenure.[37] Defendants submit Ms. Smith-Ross's deposition testimony wherein she testified that tenure at LC is not guaranteed.[38]

Ms. Smith-Ross relies on §§ 2.5. and 2.6 with respect to LC's Policy and procedure for tenure. Ms. Smith-Ross contends that LC breached its contract with her by failing to notify her

---

[35] Defendants' exhibit C, Smith-Ross depo. p. 184.
[36] R. #1, ¶ 25, 48.
[37] Defendants' exhibit A, Brewer affidavit ¶ 13.
[38] Defendants' exhibit C, Smith-Ross depo. p. 98.

that she was eligible for tenure. Section 2.11.1 provides the "Non-appointment" provisions of the Faculty Handbook as follows:

> The term "Non-reappointment" is used to denote the non-renewal of an existing non-tenured faculty member's appointment and the decision of the College ... not to offer a new contract of employment for a period of time beyond the expiration of the present contract...
> ***
> A non-tenured faculty member's employment and appointment shall cease at the end of the term of the contract of employment held by the faculty member. The non-tenured faculty member has no claim or right in regards to future employment beyond the term of his or her contract.
> ***
> ... the College's normal practice is to provide notice of non-reappointment ... by the following dates ... for faculty members who have completed three or more years of service, notice is normally provided prior to January 15, or at least six months before the expiration of an appointment which expires during an academic year.[39]

In her deposition testimony, Ms. Smith-Ross agreed that her employment and appointment at LC was subject to the non-reappointment clause contained in the Handbook.[40] Furthermore, Ms. Smith-Ross's 2015-2016 contract also specifically provided that "[t]his contract is subject to non-renewal..."[41]

Ms. Smith-Ross has failed to submit any summary judgment evidence to create a genuine issue of material fact as to her breach of contract claims. The handbook clearly and unequivocally states that tenure is not guaranteed regardless of whether or not LC failed to give her notice of

---

[39] Defendants' Exhibit C, Smith-Ross depo. exhibit 5.
[40] Id. depo. pp. 167-168.
[41] Defendants' Exhibit C, depo. exhibit 3.

her tenure eligibility (without considering whether or not she was even eligible for tenure).[42] Accordingly, plaintiffs' breach of contract claims as to the tenure process fails as well and will be dismissed.

*Injunctive relief*

Because the court finds that all of Ms. Smith-Ross's substantive claims fail, we find that any injunctive relief is likewise without merit and will be dismissed.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment will be granted in its entirety dismissing with prejudice Plaintiff's claims against Defendants at Plaintiff's costs.

**THUS DONE AND SIGNED** in Alexandria, Louisiana on this 3rd day of April, 2017.

```
                        _____
                            JAMES T. TRIMBLE, JR.
                         UNITED STATES DISTRICT JUDGE
```

---

[42] The court does not need to determine whether or not Ms. Smith-Ross was eligible for tenure because we find that the non-renewal contract and the Handbook both expressly state that tenure is not guaranteed.